**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| PENELOPE BOND, individually and as Executrix of the Estate of Dan M. Bond,<br><br>     Plaintiffs,<br><br>v.<br><br>AMERICAN EXPRESS COMPANY,<br><br>     Defendants. | CIVIL ACTION NO.:  1:17-cv-00461<br><br><br>**PLAINTIFFS RESPECTFULLY DEMAND A TRIAL BY JURY** |

**COMPLAINT**

COME NOW the Plaintiffs, Penelope Bond, individually and as Executrix of the Estate of Dan M. Bond, and file this Complaint as follows:

**PARTIES**

1.      Plaintiff Penelope Bond is a person over the age of 19, who is a resident citizen of the United Kingdom.

A.      Plaintiff Penelope Bond, as said Executrix, was appointed as such by the Probate Court of Baldwin County, Alabama on July 18, 2016, and she has acted in such capacity ever since.

2.      Defendant American Express is a New York corporation qualified to do business in the State of Alabama.

3.      The causes of action herein counted upon are brought (1) pursuant to the Federal Fair Credit Reporting Act ("FCRA"), as to Count One and (2) pursuant to the ancillary jurisdiction of this Court, as to Count Two.  This Court has jurisdiction pursuant to 15 U.S.C. §1681p (as to Count One).  The non-FCRA cause of action is ancillary to

the FCRA cause of action (as to Count Two).  See U.S. Const. Art. III, Section 2 (citizen of a state versus citizen of a foreign country).  The amount in controversy is more than $50,000.00.

## STATEMENT OF FACTS

4.      Dan M. Bond, late husband of Plaintiff Penelope Bond, had at the time of his death, to-wit, May 17, 2016, two (2) credit cards issued by the Defendants, to-wit, #1-9500 (a card in the name of the Decedent) and #1-92015 (an accommodation card in the name of individual Plaintiff, for which card Decedent was alone financially responsible).

5.      As of May 17, 2016, Decedent had unpaid debits against the two (2) cards as follows (aggregate amount of **$9,744.00**):

(a) May 2016 debits against Decedent's account (#1-95000) in the total amount of, to-wit, **$7,853.00**, less than, to-wit, $100.00 of which were incurred after Decedent's death;

(b) May 2016 debits against Decedent's account (#1-92015) in the total amount of **$1,691.00** (pre-death of Decedent) and approximately $2,000.00 post-death of Decedent (most of which $2,000.00 was a funeral home expense on account of Decedent's death).

The amount from 5(a) ($7,853.00) plus the amount from 5(b) above ($1,6941.00) equals the amount of charges through May 2016 for which the Decedent alone was responsible for payment, and as to which Defendants were obligated to file a claim under the Alabama Statute of Non-Claims.  Ala. Code §§ 43-2-60-61 and 350 (Alabama legislature's follow-on response to *Tulsa Professional Collection Services, Inc. v.*

*JoAnne Pope, Executrix of the Estate of H. Everett Pope, Jr., Deceased*, 485 U.S. 478 (1988)).  The Defendants never filed a claim; therefore, these amounts are now forever barred.  Plaintiffs are informed and believe, and upon such information and belief, allege that Defendants never intended to comply with the Alabama Statute of Non-Claims, choosing to rely instead on fraudulently inducing individual Plaintiff to pay these amounts personally (even though these amounts were only payable by the Estate (and then only after the 6-month period ran, and then only absent a successful contest of the claim in Probate Court)).  It is not the case that Defendant allowed the 6-month deadline to expire inadvertently.

6.     Defendants were given a so-called "Tulsa Notice" (per the statutes and *Tulsa* Case cited in paragraph 5 above) in compliance with Alabama law, which notice was reiterated to Defendants twice in writing.   (Plaintiffs attempted by telephone to obtain a good mailing address and were told that any correspondence needed to be sent via facsimile to "DART" at telephone no. (623) 444-3001).  See Exhibits "A," "B," and "C" attached hereto and made part hereof by this reference.   Defendants have never responded to Plaintiffs with regard thereto, and Defendants have never filed a claim in the Claim Book kept for that purpose by the Judge of Probate of Mobile County, Alabama.   In fact, after Defendants began collection efforts against Plaintiffs for the referenced charges, Defendant was given written notice the claims were barred by the Alabama Statute of Non-Claims and that, in any event, the debts were not those of the individual Plaintiff nor had they been assumed by the individual Plaintiff.  See Exhibit "D" attached hereto and made part hereof by this reference.

7.     In June 2016, there were new charges in the total amount of $1,028.84 which individual Plaintiff paid in full.

8.     There are over $7,000.00 of credits in June, most of which have to do with Delta Airlines refunds.   Defendants credited these refunds against the "previous balance" of $11,527.63 (the opening June debits balance).

9.     There is also a June 2016 claim for $5,177.05 aimed at Plaintiff, individually, in a brand new account number 96008 (an unauthorized third account) which Plaintiff individually did not authorize and as to which Plaintiff intentionally and explicitly refused to sign an assumption agreement (relating to a consolidation of old numbers 1-95000 and 1-92015)), because the assumption agreement would have made Plaintiff individually responsible for the cards, debits, and present and future payments (including said debits totaling $9,744.00 to which reference is made in paragraph 5 above).

10.     In view of the above, the most debits for which Plaintiff individually could have possibly been liable is approximately $2,100.00 (per paragraph 5(a) and 5(b) above), assuming, *arguendo,* success by Defendants under quasi-contract or the like.

11.     Never intending to comply with the Alabama Statute of Non-Claims, Defendants have never broken out the intentionally "bundled" amounts (as Plaintiffs have had to try to do on their own), but nonetheless "dunned" Plaintiff individually in the June statement of account in said amount of $5,177.05 on account of which Defendants later "furnished" (as that term is used in the FCRA) so-called "derogatories" in Plaintiff's individual files with all three (3) credit reporting agencies ("CRAs" collectively, and each a "CRA," individually).   Defendants knew (or should have known) that the "derogatories"

4

were false and had, <u>prior</u> to such "furnishing" by Defendants (<u>then</u> implicating the FCRA), been presented to Plaintiffs to fraudulently induce Plaintiffs to pay a debt not owed.

12.    Defendants also turned over for collection by AllTran Company (and later by Nationwide Co.) false amount(s) for collection.  To Plaintiffs' best knowledge, information and belief, both of the collection agencies have ceased their attempts at collection, not having collected anything while their respective files were open.

13.    Despite repeated letters from Plaintiffs to Defendants, Defendants have refused to respond at all to Plaintiffs to determine what, if anything, is truly owed by Plaintiffs to Defendants.

14.    On, to-wit, April 26, 2017, Plaintiffs wrote each CRA (pursuant to 15 U.S.C. § 1681i) <u>disputing</u> the "derogatories" in each of the individual Plaintiff's files.  As a direct and proximate result of said "dispute letters" (FCRA now implicated), each CRA was obligated to notify (and to Plaintiff's best knowledge, did notify) Defendants of the dispute, on account of which notifications Defendants were obligated to conduct a reasonable investigation with respect to the disputed information (pursuant to 15 U.S.C. § 1681i).  The derogatories in two (2) of the three (3) CRA files were removed, but there is one (1) file (that of TransUnion) where the derogatories remain in place, in spite of whatever investigation Defendants actually conducted, in violation of 15 U.S.C. § 1681i, which requires inaccurate information to be reported to <u>all</u> CRAs for correction.  It was these so-called "dispute letters" which brought the FCRA into play and as to which the Defendants had the duty, as a "furnisher" of derogatories, to comply with the FCRA. Defendants' duties <u>to</u> <u>Plaintiffs</u> are under 15 U.S.C. § 1681s-2(b), not under 15 U.S.C.

§1681s-2(a).  Plaintiffs are making no claims under "(a)" because Plaintiffs acknowledge that their private FCRA rights are entirely under "(b)" (not "(a)").

15.    In spite of written requests, Defendants have given no explanation whatsoever to Plaintiffs as to what prompted the "derogatories" or the erroneous amount of total debts which Defendants chose to write off prior to sending Plaintiffs' file to collection.  Nor have Defendants explained the results of their investigation and the disparate responses of the CRAs on account of Defendants' investigation.

16.    On the July statements, individual Plaintiff paid in full the new charges of $1,028.84 (Defendants "dunning" for $4,121.00 "past due").  On the August statements, individual Plaintiff paid in full the new charge of $144.90 (Defendants "dunning" for $4,055.00 "past due").  On both of these statements, the old accommodation card (1-92015) and the new unsolicited and unauthorized card (1-90008) have the charges combined.  Decedent's old card (1-95000) had by then disappeared, and the pre-death charges (subject to the Alabama Statute of Non-Claims) had been carried over to 1-92015 and 1-96008, the effect of which is to make the necessity of filing of claims intentionally not transparent with respect to the Decedent's pre-death charges.  Individual Plaintiff had started to pay the $4,121.00 "dun" (yielding to Defendants' fraudulent inducement) but stopped payment on the check because (a) Defendant had not filed a claim under the Alabama Statute of Non-Claims, and (b) Plaintiffs became aware of the fraud in the inducement being practiced on Plaintiffs (particularly individual Plaintiff on account of the emphatically rejected assumption agreement) by Defendants.  The "stop payment" cost Plaintiff two (2) bank charges: the $30.00 "stop" charge by

Plaintiff's bank, Wells Fargo, and an additional $27.00 "tacked on" by Defendants as a "returned payment fee."

17.     PNC Bank has increased individual Plaintiff's interest rate on account of the "derogatories" Defendants "furnished" to the CRAs.  See Exhibit "E" attached hereto and made part hereof by this reference.

## COUNT ONE
### (FAILURE TO COMPLY WITH 15 U.S.C. § 1681s-2(b))

18.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 17 as though fully set forth herein.

19.      With respect to TransUnion, Defendants failed to do the following:

        (A)     failed to properly conduct the statutory investigation;

        (B)     failed to properly review all relevant information; and

        (C)     failed to properly report the results of its investigation.

As a direct and proximate result of these statutory violations (so-called "(b)" violations, not so-called "(a)" violations), the "derogatories" against Plaintiff continue to be carried against Plaintiffs.  TransUnion's response to Plaintiffs' "dispute letter" was to reaffirm the derogatories against Plaintiffs, as a proximate result of Defendants' failure in their so-called "(b)" duties (not "a" duties, as to which Plaintiffs have no private cause of action).

20.     Each CRA had a duty to report accurate information about Plaintiffs in their credit reports.  Then, after Plaintiffs gave their notice of dispute, the Defendants obviously frustrated the CRAs' investigations by not performing their own statutorily required duties, as "furnishers," pursuant to 15 U.S.C. § 1681s-2, the result of which is the disparate treatment given to Defendants' previously reported "derogatories" against Plaintiffs.  On account of a lack of (1) reasonable investigation, (2) review of all relevant

information and (3) proper report of such, some CRAs removed the derogatories <u>but</u> one did not (TransUnion).  This <u>lack</u> <u>of</u> <u>uniformity</u> (plus Defendants' failure to follow up to make sure the derogatories were removed) shows Defendants intentionally or negligently breached their duties to Plaintiffs under 15 U.S.C. §1681s-2<u>(b)</u>, the breach of which does indeed give Plaintiffs a <u>private</u> <u>cause</u> <u>of</u> <u>action</u> against Defendants (as distinguished from §1981s-2(a), the breech of which does not).

WHEREFORE, Plaintiffs respectfully demand a computation of statutory damages, as well as such compensatory and punitive damages (including damage for mental anguish and emotional distress) as Plaintiffs prove at trial, together with attorneys' fees, court costs and expenses (including statutory attorneys' fees and costs of the action set forth in 15 U.S.C. §1681m(a)(3)).

## <u>COUNT TWO</u>
### (ANCILLARY CAUSE OF ACTION FOR FRAUD IN THE INDUCEMENT)

21.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 20 as though fully set forth herein.

22.     <u>Prior</u> to the accrual of Plaintiffs' rights under 15 U.S.C. §1681s-2(b) (duties of furnishers of information upon notice of dispute) on account of the "dispute letter," there was fraud in the inducement practiced by Defendants upon Plaintiffs, the fraud claims on account of which are <u>not</u> <u>preempted</u> by the FCRA.  The complaint of fraud occurred <u>before</u> Defendants (as "furnishers" of "derogatories") sent the "derogatories" to the three (3) CRAs.  This Count Two does not even involve any CRA whatsoever.

23.     With respect to the details of said fraud in the inducement, Defendants did the following:

(A)   Defendants furnished to Plaintiffs (as well as the collection agencies [not CRAs] Defendants relied upon) inaccurate information (both as to amount delinquent and as to personal liability *vel non* of individual Plaintiff) which Defendants knew was not true. Defendants knew the assumption agreement referenced in paragraph 9 above was explicitly rejected by Plaintiffs (see Exhibit "F" attached hereto and made part hereof by this reference), but Defendants nonetheless proceeded to create a new third account, where the "debits" were materially misstated by Defendants, as a fraudulent inducement to Plaintiffs to pay indebtedness not owed by Plaintiffs.

(B)   Defendants knew that the Alabama Statute of Non-Claims was running (having been informed three (3) times of the necessity to file a claim), but Defendants remained oblivious to the running of the Statute (never intending to comply with the Statute). Defendants, by their silence, fraudulently induced the collection agencies and Plaintiffs to believe that there was no statute of limitations problem (the Alabama Statute of Non-Claims being in the nature of a statute of limitations under Alabama probate procedure) with respect to that part of the debt owed by the Estate alone absent the bar of the Statute.

(C)   Defendants continually misstated the unpaid balance of the total indebtedness by "bundling" Plaintiff, individually, and as Executrix,

9

making it extremely difficult to determine who owed what and when, the effect of which was to (1) ignore that the assumption agreement was emphatically rejected by Plaintiffs, and (2) ignore the Alabama Statute of Non-Claims.

(D)     As a material inducement to Plaintiff(s) to pay a debt not owed, Defendant treated individual Plaintiff as a debtor, well knowing that she was in fact not a debtor, she having emphatically declined to sign the assumption agreement Defendants submitted to her for signature.

(E)     Defendants falsely reported late payments against Plaintiff individually when they knew the late payments should have been "broken out" as to what was only owed by Decedent's Estate, instead of "bundling" the total debt (out of which the late payment fees arose) into a new account (and number, to-wit, said #96008), without Plaintiff's consent, all as a fraudulent inducement to Plaintiff to pay late fees not owed.

(F)     Defendants intentionally and willfully created a so-called "mixed file," making it extremely difficult to sort out (a) time-barred claims attributable to Decedent alone, and (b) the total amount of debts, if any, attributable to individual Plaintiff alone, all as a fraudulent inducement to Plaintiffs to pay indebtedness not owed.

(G)     Defendants continued sending monthly statements to individual Plaintiff "dunning" her, but nonetheless knowing: (1) that the part of

10

the running account due from the Estate could only be collected by filing a claim (indeed Plaintiff being <u>prohibited</u> <u>statutorily</u> from paying that part of the indebtedness absent a valid, sworn claim, under Ala. Code §§43-2-350 and 352, which Defendants have steadfastly refused to file); and (2) that part of the running account was false because Defendants knew the assumption agreement had been emphatically rejected.  All of this was done as a fraudulent inducement to Plaintiffs to accept the running account as true and correct when the running account was not true and correct.

(H)    Defendants have never, orally or in writing, tried to contact Plaintiffs' lawyers to discuss any of these matters, instead surreptitiously continuing to communicate *ex parte* and, *inter alia*, creating and "bundling" said unauthorized third account for the purpose of inducing Plaintiff to pay a debt that she did not owe.

(I)    Defendants harassed Plaintiff by calling her neighbors (or inducing one or more collection agencies (not CRAs) to do so) as part of an effort to collect indebtedness which Defendants knew or should have known was not due.

24.    The acts of fraud in the inducement were done <u>before</u> Defendants made themselves "furnishers" of "derogatories" in this case, and hence before any CRA was sent "derogatories" by Defendants (hence <u>no</u> <u>preemption</u> of the fraud in the inducement).  The fraud in the inducement described above in this Count Two <u>predates</u>

any application of the FCRA, such fraud giving rise to the ancillary jurisdiction of this Court (separate and apart from the matters and things alleged in Count One of this Complaint, all of which took place <u>after</u> Defendants became "furnishers" under the FCRA).

25.     The fraudulent misrepresentations made by Defendants induced Plaintiff to issue payment for debts not owed by her and, upon realizing the fraudulent misrepresentations, Plaintiff incurred financial loss in the way of "stop" charges and "returned payment" fees.

### <u>COUNT THREE</u>
#### (ANCILLARY CAUSE OF ACTION FOR SLANDER)

26.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 25 as though fully set forth herein.

27.     Defendant falsely reported or caused to be reported to AllTran Company (and later to Nationwide) that Plaintiff was indebted and that Plaintiff had failed or refused to pay these debts.

28.     The aforesaid reports were false and Defendant knew them to be false.

29.     Nonetheless, Defendant contracted with AllTran, or alternatively sold the rights, to collect the debt from Plaintiff which Defendant knew was not owed.

30.     With full knowledge that AllTran would employ such collection methods, Defendant caused AllTran to contact Plaintiff's neighbors and friends thus causing great embarrassment, humiliation, mental anguish and emotional distress to Plaintiff.

31.     The slander was committed <u>before</u> Defendants made themselves "furnishers" of "derogatories" in this case, and hence before any CRA was sent "derogatories" by Defendants (hence <u>no</u> <u>preemption</u> of the slander).   The slander

described above in this Count Three <u>predates</u> any application of the FCRA, such slander giving rise to the ancillary jurisdiction of this Court (separate and apart from the matters and things alleged in Count One of this Complaint, all of which took place <u>after</u> Defendants became "furnishers" under the FCRA).

WHEREFORE, Plaintiffs respectfully demand such compensatory and punitive damages (including damages for mental anguish and emotional distress) as Plaintiffs prove at trial, together with attorneys' fees, court costs and expenses.

DONE this the 18th day of October, 2017.

**PLAINTIFFS RESPECTFULLY DEMAND A TRIAL BY JURY**

Respectfully submitted:

<u>**s/Lawrence M. Wettermark**</u>
LAWRENCE M. WETTERMARK  (WETTL2146)
lwettermark@gallowayllp.com
MELISSA P. HUNTER   (HUNTM3367)
mhunter@gallowayllp.com
GALLOWAY, WETTERMARK, EVEREST
     & RUTENS, LLP
Post Office Box 16629
Mobile, Alabama  36616-0629
PH: (251)476-4493
FX: (251)479-5566
*Attorneys for Plaintiffs*

**SERVE DEFENDANT BY CERTIFIED MAIL AT:**

American Express Company
C T Corporation System
2 North Jackson St., Suite 605
Montgomery, AL  36104

and

American Express Company
Attn: Legal Department
200 Vesley Street
New York, NY 10285-4601

# EXHIBIT A

# GALLOWAY, WETTERMARK, EVEREST
## & RUTENS, LLP

THOMAS M. GALLOWAY, JR.
LAWRENCE M. WETTERMARK*
ROBERT M. GALLOWAY
MARK J. EVEREST
ANDREW J. RUTENS**
ALICIA J. CORLEY †
J. WILLIS GARRETT, III
MELISSA P. HUNTER

* ALSO ADMITTED IN MISSISSIPPI
**ALSO ADMITTED IN FLORIDA
† ALSO ADMITTED IN LOUISIANA

ATTORNEYS AT LAW

3263 COTTAGE HILL ROAD (36606)
P.O. BOX 16629
MOBILE, ALABAMA 36616-0629

Telephone: [251] 476-4493
Fax: [251] 479-5566

OF COUNSEL
EDWARD A. HYNDMAN, JR. †

July 28, 2016

**Via Facsimile (623) 444-3001**
American Express
Attn: DART

> Re:  Dan M. Bond, SS#: 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
> Gold Card Account No. Ending 196008
> For full credit in the amount of $4,121.21

Gentlemen:

As attorney for the Estate of Dan M. Bond, deceased, I write in response to your "dun" of his widow, Penelope Bond. The amount of $4,121.21 unreceived as yet by you is due (if due at all) by said Estate (Penelope Bond, as Personal Representative) and not by his widow in her individual capacity. I am attaching to this letter a so-called "Tulsa Notice" so you can file a creditor's claim against said Estate, should you care to do so. If you have any questions, please email me at EAH295@aol.com or call me at (251) 340-6447. Thank you for your cooperation in this matter.

With best regards, I am

Sincerely,

EDWARD A. HYNDMAN, JR.
For the Firm

EAH/dlw
Enclosure

cc:    Penelope Bond, as Personal Representative of the Estate of Dan M. Bond

**Penelope Bond, as Personal
Representative of the Estate of
Dan M. Bond
P. O. Box 1287
Point Clear, AL 36564-1287**

July 28, 2016

<u>**Via Facsimile (623) 444-3001**</u>
American Express
Attn: DART

RE:   ESTATE OF DAN M. BOND, deceased

Dear Sir/Madam:

This is formal written notice of your right to file a claim against the Estate Dan M. Bond, for the outstanding balance of $4,121.21 on Account # ending 196008.

On May 17, 2016, my husband, Dan M. Bond, passed away, and a petition for probate of his will was filed with the Judge of Probate of Baldwin County, Alabama, and Letters Testamentary were granted by the Probate Court of Baldwin County, Alabama, to me, as Personal Representative, in Case No. 33443, on July 18, 2016.

Your claim must be presented within six months after the grant of letters, or within five months from the date of the first publication of notice, whichever is the later to occur; otherwise your claim will be barred.   The first publication date was July 18, 2016.   The claim should be sent to the Judge of Probate of Baldwin County, Alabama, either in person at the Recording Office located at 220 Courthouse Square, Bay Minette, Alabama, or in writing at Post Office Box 459, Bay Minette, AL 36507.

Penelope Bond, as Personal Representative
of the Estate of Dan M. Bond

# EXHIBIT B

# GALLOWAY, WETTERMARK, EVEREST
## & RUTENS, LLP

THOMAS M. GALLOWAY, JR.
LAWRENCE M. WETTERMARK*
ROBERT M. GALLOWAY
MARK J. EVEREST
ANDREW J. RUTENS**
ALICIA J. CORLEY †
J. WILLIS GARRETT, III
MELISSA P. HUNTER

* ALSO ADMITTED IN MISSISSIPPI
** ALSO ADMITTED IN FLORIDA
† ALSO ADMITTED IN LOUISIANA

ATTORNEYS AT LAW

3263 COTTAGE HILL ROAD (36606)
P.O. BOX 16629
MOBILE, ALABAMA 36616-0629

Telephone: [251] 476-4493
Fax: [251] 479-5566

OF COUNSEL
EDWARD A. HYNDMAN, JR. †

September 13, 2016

**Via Facsimile & U.S. First Class Mail**
American Express
Attn: DART
P. O. Box 297879
Ft. Lauderdale, FL 33329-7879

> Re:   Dan M. Bond, SS#: 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
> Gold Card Account No. Ending 196008
> For full credit in the amount of $4,121.21

Gentlemen:

Enclosed is yet another "dun" you have sent to Mrs. Penelope Bond. She has no responsibility for this account. Your claim (if indeed you have one) is against her deceased husband, Dan Bond. Please refer to earlier correspondence in this matter from this law firm.

With best regards, I am

Sincerely,

EDWARD A. HYNDMAN, JR.
For the Firm

EAH/dlw
Enclosure

cc:   Penelope Bond, as Personal Representative of the Estate of Dan M. Bond

American Express
P.O. Box 297879
Ft. Lauderdale, FL 33329-7879

www.americanexpress.com

September 05, 2016

MB 01 010554 84796 B 29 D
ıullılılıılılılıpılıpullılılıpılıllılılılılılılılıll
Penelope Bond
PO Box 1287
Point Clear AL 36564-1287

**Your account(s) is scheduled for cancellation.
Immediate action is required to avoid cancellation
and possible placement with a collection agency.**

Account Ending: 196008 Gold Card

Dear Penelope Bond:

As of the date on this letter, our records indicate that your American Express account referenced below is significantly past due. We have not currently cancelled your account. However, without immediate payment of your past due balance, we may take this action. Continued failure to pay the balance(s) indicated below may also result in the account(s) being sent to a collection agency.

We offer several convenient ways to make a payment:

**Online** - You can make immediate or scheduled payments online at americanexpress.com/ppc

**By Phone** - Call us anytime at 1-800-I-PAY-AXP (1-800-472-9297)

**AutoPay** - To help you pay on time in the future, enroll in AutoPay to schedule ongoing automatic payments at **americanexpress.com/autopay**

**Mobile (Card Products Only)** - Download our mobile app or visit americanexpress.com using your smart phone or tablet

*If you cannot make a payment or have any questions, please contact us immediately at 1-800-592-1160. We are here to help you 24 hours a day, 7 days a week.*

Sincerely,

American Express Collections Department

PAST DUE

# EXHIBIT C

# GALLOWAY, WETTERMARK, EVEREST
## & RUTENS, LLP

THOMAS M. GALLOWAY, JR.
LAWRENCE M. WETTERMARK*
ROBERT M. GALLOWAY
MARK J. EVEREST
ANDREW J. RUTENS**
ALICIA J. CORLEY †
J. WILLIS GARRETT, III
MELISSA P. HUNTER

* ALSO ADMITTED IN MISSISSIPPI
** ALSO ADMITTED IN FLORIDA
† ALSO ADMITTED IN LOUISIANA

ATTORNEYS AT LAW

3263 COTTAGE HILL ROAD  (36606)
P.O. BOX 16629
MOBILE, ALABAMA 36616-0629

Telephone:  [251] 476-4493
Fax:  [251] 479-5566

OF COUNSEL
EDWARD A. HYNDMAN, JR. †

September 22, 2016

**Via Facsimile & U.S. First Class Mail**
American Express
Attn: DART
P. O. Box 297879
Ft. Lauderdale, FL 33329-7879

      Re:    Dan M. Bond, SS#: 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
             Gold Card Account No. Ending 196008
             For full credit in the amount of $4,121.21

Gentlemen:

      Enclosed is yet another "dun" you have sent to Mrs. Penelope Bond, this time via electronic mail on September 20, 2016.  As stated previously in numerous letters to American Express, Mrs. Bond has no responsibility for the above-referenced account.  Your claim (if indeed you have one) is against her deceased husband, Dan Bond.  Please refer to said earlier correspondence in this matter from this law firm.

      With best regards, I am

                    Sincerely,

                    EDWARD A. HYNDMAN, JR.
                    For the Firm

EAH/dlw
Enclosure

cc:    Penelope Bond, as Personal Representative of the Estate of Dan M. Bond

**From:** "American Express" <Amex@welcome.aexp.com>
**Date:** September 20, 2016 at 4:06:40 AM CDT
**To:** <pbondturn@yahoo.co.uk>
**Subject: Please contact us**
**Reply-To:** "American Express" <Amex@welcome.americanexpress.com>



Important Account Information

Please contact us



Your Account Number Ending: 196008

Dear Penelope Bond:

We are writing because we need to speak with you about your account(s) and we have been unable to reach you by phone.

Please call us today at 1-800-592-1160. We look forward to hearing from you soon.

Contact Customer Service   |   View Our Privacy Statement   |   Add Us to Your Address Book

This is a customer service e-mail from American Express. Using the spam/junk mail function may not block servicing messages from being sent to your email account. To learn more about e-mail security or report a suspicious e-mail, please visit us at americanexpress.com/phishing. We kindly ask you not to reply to this e-mail but instead contact us securely via customer service.

Copyright 2016 American Express. All rights reserved.

INCUUR C90                                       INCUUR

# EXHIBIT D

# GALLOWAY, WETTERMARK, EVEREST & RUTENS, LLP

THOMAS M. GALLOWAY, JR.
LAWRENCE M. WETTERMARK*
ROBERT M. GALLOWAY
MARK J. EVEREST
ANDREW J. RUTENS**
J. WILLIS GARRETT, III
ALICIA J. CORLEY †
MELISSA P. HUNTER

ATTORNEYS AT LAW

3263 COTTAGE HILL ROAD (36606)
P.O. BOX 16629
MOBILE, ALABAMA 36616-0629

Telephone: [251] 476-4493
Fax: [251] 479-5566

OF COUNSEL
EDWARD A. HYNDMAN, JR. †

* ALSO ADMITTED IN MISSISSIPPI
**ALSO ADMITTED IN FLORIDA
† ALSO ADMITTED IN LOUISIANA

March 31, 2017

**Via Certified Mail**
American Express Company
200 Vesey Street
New York, NY 10285-0002

CT Corporation
2 N. Jackson Street, Ste. 605
Montgomery, AL 36104

> Re:   Penelope Bond
>        Gold Card Account ending 1-96008
>        GWER File No.: 17-8318

Dear Gentlemen:

Please be advised that this law firm represents Penelope Bond with regard to the debt that American Express has reported as being past due. Adverse information has been placed against Penelope Bond's credit reports by American Express in violation of the Fair Credit Reporting Act.

Penelope Bond formally disputes the validity of this debt. This debt referenced in this account belongs to Penelope's deceased husband, Dan M. Bond (Gold Card account ending 1-95000). Following the death of Dan M. Bond, Penelope Bond declined to assume any debt in this account. Please send me a copy of the original application for account 1-96008 for which you are seeking payment from my client and any signatures associated with this account. In addition, please provide me with a copy of the documentation that supports why you believe this debt belongs to Penelope Bond.

Thank you for your attention to this matter.

Very truly yours,

LAWRENCE M. WETTERMARK
For the Firm

LMW/dlw
Enclosure
cc:   Penelope Bond

# GALLOWAY, WETTERMARK, EVEREST
## & RUTENS, LLP

THOMAS M. GALLOWAY, JR.
LAWRENCE M. WETTERMARK*
ROBERT M. GALLOWAY
MARK J. EVEREST
ANDREW J. RUTENS**
ALICIA J. CORLEY †
J. WILLIS GARRETT, III
MELISSA P. HUNTER

*ALSO ADMITTED IN MISSISSIPPI
**ALSO ADMITTED IN FLORIDA
† ALSO ADMITTED IN LOUISIANA

ATTORNEYS AT LAW

3263 COTTAGE HILL ROAD (36606)
P.O. BOX 16529
MOBILE, ALABAMA 36616-0529

Telephone: (251) 476-4493
Fax: (251) 479-5566

OF COUNSEL
EDWARD A. HYNDMAN, JR. †

August 17, 2016

Via Facsimile (623) 444-3001
American Express
Attn: DART

Re:   Estate of Dan M. Bond, SS#: 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
Gold Card Account No. Ending 1-95000
For full credit in the amount of $4,121.21

Gentlemen:

I represent Penelope Bond, as Personal Representative for the Estate of Dan M. Bond, deceased. Per the attached, she declines to take over this account on behalf of Mr. Bond. If you have any questions, you may contact me at (251) 340-6447 or at EAH295@aol.com. Thank You for your assistance.

With best regards, I am

Sincerely,

EDWARD A. HYNDMAN, JR.
For the Firm

EAH/dlw
Enclosure

cc:   Penelope Bond, as Personal Representative of the Estate of Dan M. Bond

P.S. Please do not get confused. Mrs. Bond has a new bill for her own charges, and she will pay that individually and not as said Personal Representative. But in no way, shape or form will she pay any of Mr. Bond's charges.



Please provide the following if the Original Card Member is deceased:

Date of Death (Month Day Year): 05 / 17 / 2016

Executor's Name: MRS, PENELOPE BOND

Executor's Address: P. O. BOX 1287

City, State, Zip: POINT CLEAR AL : 36564

Executor's Telephone Number: 251 928 6879

Upon approval of this application, I accept full financial responsibility for the original account listed above including any billed and\or unbilled balances, and including the outstanding balance of $4,877.04 as of 06/28/2016.

_____                    _____
        Your Signature                              Today's Date

By signing above, I certify that I have read, understand agree to all the terms, conditions and disclosures enclosed with the application.

For Internal use only: SPID _____   Source Code _____   SPI _____

DECLINED

## TERMS AND CONDITIONS

You are not required or personally obligated to take over this account on behalf of the Card Member.

By submitting this application, you are applying to have this account remain open and a new card be issued in your name as the primary Card Member.

You agree to be liable for all charges on the Account, including the existing balance. You also agree to be liable for charges made by any additional Card Members that you authorize on this account.

Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account, including your name, address, date of birth, and other information that will allow us to verify your identity.

Upon approval, certain benefits and services that the account may be currently enrolled in will be removed and you will need to re-authorize these services when you receive your new Card. This includes Account Manager Access, Manage Your Account Online, Passwords, AutoPay, Pay by Phone and Pay by Computer.

By submitting this application, you agree to be bound by the agreement governing your account and you also authorize us to obtain reports from consumer reporting agencies.

You will become responsible for both the existing balance and all future charges. This means the liability of this account will be transferred to you from the estate of the deceased Card Member.

### Note for Ohio Residents

The Ohio law against discrimination requires that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

An applicant, if married, may apply for a separate account.

### Patriot Act Notice

Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account, including your name, address, date of birth and other information that will allow us to verify your identity.

### Married Wisconsin Residents

No provision of any marital property agreement, unilateral agreement, or court decree under Wisconsin's Marital Property Act will adversely affect a creditor's interest unless, prior to the time credit is granted, the creditor is furnished a copy of that agreement or decree or is given complete information about the agreement or decree.

# EXHIBIT E

 **PNC BANK**

P.O. Box 3429, Pittsburgh, PA 15230-3429

---

|  | ACCOUNT ENDING IN | 7559 |
|---|---|---|
|  | DATE | January 17, 2017 |
|  | PAGE 1 of 2 |  |

*******************************SNGLP          1 1
Penelope Bond                                 0515
PO Box 1287
Point Clear, AL 36564-1287

‖ıilıılᵗ|ılılı|ᵗᵐᵗıᵗ|ᵗ|‖ıllıᵗᵗ‖‖ᵗᵗ|ᵗ‖ᵗılıᵗ|ılılıⅼ|

---

 **Your PNC credit card account was reviewed, and the total credit limit has been reduced.**

---

**Here's what happened:**

We periodically review credit card accounts to assess whether credit limits assigned to them are appropriate given the current credit qualifications of the account owners.

Based on a recent review of your PNC credit card account ending in 7559, as well as your other account relationships with PNC, the total credit limit for your PNC points® Visa Signature® has been reduced to $500 as of January 12, 2017.

  This action was taken for the following reasons:
- Serious delinquency with other creditors
- Time since delinquency is too recent or unknown
- Too few accounts currently paid as agreed
- Insufficient assets with PNC or its affiliates

As a result, your cash advance limit has also been reduced. The amount available for cash advance is provided on your statement each month and within PNC Online Banking.

**Information about your rights under the Fair Credit Reporting Act and about the score that was used in making this decision are provided on the back page.**

---

**Here's how you can reach us if you have questions or need assistance:**

Thank you for choosing PNC Bank. If you have any questions or need assistance, please call us at 1-800-622-3465 or write to us at Credit Card Services; P.O. Box 3429; Pittsburgh, PA 15230-3429.

---

©2017 The PNC Financial Services Group, Inc. All rights reserved. PNC Bank, National Association. **Member FDIC**



**PNC BANK**

P.O. Box 3429, Pittsburgh, PA 15230-3429

ACCOUNT ENDING IN    7559
DATE    January 17, 2017
PAGE 2 of 2

**Here's important information about how we made our decision and your rights under the Fair Credit Reporting Act:**

Our credit decision was based in whole or in part on information obtained from the consumer credit reporting agency listed below:

     Experian
     701 Experian Parkway
     P.O. Box 2002 Allen, TX 75013
     1-888-397-3742
     experian.com/reportaccess

The consumer reporting agency identified above did not make this decision and is unable to provide you with specific reasons why this action was taken.

**Your rights under the Fair Credit Reporting Act:**
- You have the right to know the information in your credit report.
- You have the right to a free copy of the report from the consumer reporting agency that provided the information, if your request to the consumer reporting agency is made within 60 days of receiving this letter.
- You have the right to file a dispute with the consumer reporting agency if you find that any information in your report is inaccurate or incomplete.

We also obtained your credit score from this consumer reporting agency and used it in making our credit decision. Your credit score is a number that reflects the information in your credit report. Your credit score can change, depending on how the information in your credit report changes.

     Your credit score: 593
     Date: December 3, 2016
     Scores range from a low of **300** to a high of **850.**
     Key factors that adversely affected your credit score:
- Serious delinquency
- Time since delinquency is too recent or unknown
- Too few accounts currently paid as agreed
- Lack of recent installment loan information
- Too many inquiries last 12 months

If you have any questions regarding your credit score, you should contact the credit reporting agency identified above at the address or telephone number provided.

Keep in mind that, in addition to the free report you are entitled to as described above, you are also entitled to a free copy of your credit report from all three credit reporting agencies once every 12 months. Every consumer should check their credit reports from each of the 3 bureaus annually. Doing so will make sure your credit is up-to-date and accurate.

Notice: The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is Bureau of Consumer Financial Protection, 1700 G Street NW., Washington, DC 20006

©2017 The PNC Financial Services Group, Inc. All rights reserved. PNC Bank, National Association. **Member FDIC**

# EXHIBIT F

# GALLOWAY, WETTERMARK, EVEREST & RUTENS, LLP

THOMAS M. GALLOWAY, JR.
LAWRENCE M. WETTERMARK*
ROBERT M. GALLOWAY
MARK J. EVEREST
ANDREW J. RUTENS**
ALICIA J. CORLEY †
J. WILLIS GARRETT, III
MELISSA P. HUNTER

* ALSO ADMITTED IN MISSISSIPPI
** ALSO ADMITTED IN FLORIDA
† ALSO ADMITTED IN LOUISIANA

ATTORNEYS AT LAW

3263 COTTAGE HILL ROAD (36606)
P.O. BOX 16629
MOBILE, ALABAMA 36616-0629

Telephone: [251] 476-4493
Fax: [251] 479-5566

OF COUNSEL
EDWARD A. HYNDMAN, JR. †

August 17, 2016

**Via Facsimile (623) 444-3001**
American Express
Attn: DART

Re:   Estate of Dan M. Bond, SS#: 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
Gold Card Account No. Ending 1-95000
For full credit in the amount of $4,121.21

Gentlemen:

I represent Penelope Bond, as Personal Representative for the Estate of Dan M. Bond, deceased. Per the attached, she declines to take over this account on behalf of Mr. Bond. If you have any questions, you may contact me at (251) 340-6447 or at EAH295@aol.com. Thank You for your assistance.

With best regards, I am

Sincerely,

EDWARD A. HYNDMAN, JR.
For the Firm

EAH/dlw
Enclosure

cc:   Penelope Bond, as Personal Representative of the Estate of Dan M. Bond

P.S. Please do not get confused. Mrs. Bond has a new bill for her own charges, and she will pay that individually and not as said Personal Representative. But in no way, shape or form will she pay any of Mr. Bond's charges.



Please provide the following if the Original Card Member is deceased:

Date of Death (Month Day Year): 05/17/2016

Executor's Name: MRS, PENELOPE BOWD

Executor's Address: P.O. Box 1287

City, State, Zip: POINT CLEAR  AL - 36564

Executor's Telephone Number: 251 928 6879

Upon approval of this application, I accept full financial responsibility for the original account listed above including any billed and\or unbilled balances, and including the outstanding balance of $4,877.04 as of 06/28/2016.

_____          _____
                    Your Signature                                              Today's Date

By signing above, I certify that I have read, and agree to all the terms, conditions and disclosures enclosed with the application.

For internal use only: SPID _____ Source Code _____ SPI _____

DECLINED

## TERMS AND CONDITIONS

You are not required or personally obligated to take over this account on behalf of the Card Member.

By submitting this application, you are applying to have this account remain open and a new card be issued in your name as the primary Card Member.

You agree to be liable for all charges on the Account, including the existing balance. You also agree to be liable for charges made by any additional Card Members that you authorize on this account.

Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account, including your name, address, date of birth, and other information that will allow us to verify your identity.

Upon approval, certain benefits and services that the account may be currently enrolled in will be removed and you will need to re-authorize these services when you receive your new Card. This includes Account Manager Access, Manage Your Account Online, Passwords, AutoPay, Pay by Phone and Pay by Computer.

By submitting this application, you agree to be bound by the agreement governing your account and you also authorize us to obtain reports from consumer reporting agencies.

You will become responsible for both the existing balance and all future charges. This means the liability of this account will be transferred to you from the estate of the deceased Card Member.

### Note for Ohio Residents
The Ohio law against discrimination requires that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

An applicant, if married, may apply for a separate account.

### Patriot Act Notice
Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account, including your name, address, date of birth and other information that will allow us to verify your identity.

### Married Wisconsin Residents
No provision of any marital property agreement, unilateral agreement, or court decree under Wisconsin's Marital Property Act will adversely affect a creditor's interest unless, prior to the time credit is granted, the creditor is furnished a copy of that agreement or decree or is given complete information about the agreement or decree.